IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 18, 2015 Session

## VICTOR McMILLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C62299     James F. Goodwin, Jr., Judge**

_____

**No. E2014-02132-CCA-R3-PC – Filed December 14, 2015**

_____

The petitioner, Victor McMiller, appeals the denial of post-conviction relief from his 2009 Sullivan County Criminal Court jury convictions of the sale and delivery of a Schedule III controlled substance, claiming that he was denied the effective assistance of counsel.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Bryce W. McKenzie (on appeal), Sevierville, Tennessee; and Brandon Sizemore (at hearing), Johnson City, Tennessee, for the appellant, Victor McMiller.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Barry Staubus, District Attorney General; and Kent Chitwood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Sullivan County Criminal Court jury convicted the petitioner of two counts of the sale and two counts of the delivery of dihydrocodeinone, a Schedule III controlled substance.  The trial court imposed an effective sentence of 24 years.  This court affirmed the judgments on direct appeal.  *See State v. Victor D. McMiller*, No. E2010-01558-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Dec. 6, 2011), *perm. app. denied* (Tenn. May 10, 2012).

In *Victor D. McMiller*, this court stated the facts of the case.  The evidence showed that the Kingsport Police Department used a confidential informant, Patricia Wise, to complete controlled purchases of Lortabs from the petitioner on February 11 and

April 23, 2008. *Victor D. McMiller*, slip op. at 1-3. At trial, Jessica Hooker, the petitioner's estranged wife, testified for the State as follows:

> Jessica Hooker testified that she sold Lortabs to Patricia Wise on January 28, 2008. Ms. Wise asked Ms. Hooker if she knew where she could get some Lortab pills, and Ms. Hooker responded that she could get them from [the petitioner], her then boyfriend. Ms. Hooker was married to [the petitioner] at the time of [the petitioner's] trial, but they were separated. Ms. Hooker testified that [the petitioner] had a prescription for them because he had degenerative bone disease. Ms. Wise went to [the petitioner's] apartment, and Ms. Hooker sold her the pills. Ms. Hooker later gave the money to [the petitioner]. Ms. Hooker sold pills to Ms. Wise on another occasion in March, 2008. The transaction again took place in [the petitioner's] apartment in the bedroom. [The petitioner] told Ms. Hooker that he had sold pills and that if she knew anyone who wanted to buy some, that he had them to sell. Ms. Hooker was charged with two counts each of the sale and delivery of dihydrocodeinone, to which she pled guilty. Ms. Hooker testified that [the petitioner] was not present in his apartment for the January transaction, but he was present for the March transaction. Ms. Hooker testified on cross-examination that she did not have any personal knowledge that [the petitioner] sold Lortabs to Ms. Wise on February 11th or April 23rd, and she never saw him sell Lortabs to anyone. Following a juryout hearing, on redirect examination, Ms. Hooker clarified that she had not seen [the petitioner] sell Lortabs to anyone during the time period of these offenses, but that he had told her that he was selling Lortabs.

*Id.*, slip op. at 3-4.

On May 8, 2013, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. On October 8, 2014, the post-conviction court conducted an evidentiary hearing.

At the evidentiary hearing, trial counsel testified that, prior to trial, he had objected to the State's calling Ms. Hooker as a witness at trial. Trial counsel based his

objection in part on the fact that Ms. Hooker's testimony would likely reveal the petitioner's prior bad acts. The trial court ordered that Ms. Hooker could not testify about conversations she had with the petitioner regarding drug transactions other than those for which the petitioner was on trial. Trial counsel denied opening the door to such testimony during his cross-examination of Ms. Hooker, explaining that he had "specifically tailored" his questions to Ms. Hooker to comply with the court's order. Trial counsel stated that he asked Ms. Hooker if she had "any personal knowledge that [the petitioner] sold drugs to Pat Wise on February 11th" and whether she ever "saw [the petitioner] sell Lortabs to anybody," and Ms. Hooker responded to both questions in the negative. The prosecutor then objected, stating that trial counsel had unintentionally misled the jury by asking Ms. Hooker, "You don't have personal knowledge that he sold drugs to anyone." Trial counsel testified that the prosecutor had mistakenly combined trial counsel's questions and had convinced the trial court that the door had been opened to introduce evidence of the petitioner's prior bad acts.

Trial counsel recalled that the petitioner had requested that he call his parole officer, Lisa Barker, as a witness at trial. Trial counsel interviewed Ms. Barker and decided against calling her as a witness because, first, she had indicated that the petitioner had not been doing well on parole, and, second, she would have been unable to testify to certain self-serving statements the petitioner had made.

With respect to the communication of plea offers, trial counsel testified that he "[a]bsolutely" communicated all offers to the petitioner. Trial counsel explained that he was the second attorney to handle the petitioner's case and that the original attorney had advised the petitioner of the initial offer of six years as a Range I offender. Under trial counsel's representation, the State lowered its offer to five years, which trial counsel conveyed to the petitioner in a letter dated March 31, 2009. Trial counsel read the letter aloud and noted that, in it, he had cautioned the petitioner to consider the Range I offer because the petitioner was "'in fact a Range III offender'" and that if he went to trial and was convicted he "'would be facing 15 years at 45%.'" One week prior to trial, the State again reduced its offer to four years. Trial counsel again relayed the new offer to the petitioner, and he "adamantly rejected it."

The petitioner testified that trial counsel never conveyed any plea offers to him, and he insisted that, had he known the State was offering him a sentence of five years, he "would have hurried up and jumped on it." The petitioner denied that he was doing poorly on parole, claiming that he had reported as scheduled and that he had passed all drug screens. On cross-examination, the State asked the petitioner about a letter, dated April 23, 2009, that he had written to trial counsel, in which the petitioner asked trial counsel to "come and see me . . . at Blountville jail" and ended with the phrase "No plea barga[i]n." The petitioner denied that this letter indicated a rejection of the State's

most recent plea offer, explaining that he was merely informing trial counsel that another, unnamed attorney had told him about the plea offer and that he had been unaware of the offer.

In the post-conviction court's comprehensive order denying post-conviction relief, the court found that the petitioner failed to prove the allegations of ineffective assistance of counsel by clear and convincing evidence. With respect to trial counsel's failure to call Ms. Barker as a witness, the court specifically accredited the testimony of trial counsel that Ms. Barker's testimony would have been detrimental to the petitioner's case and found that trial counsel "made professional judgments regarding those witnesses that he would call on behalf of [the p]etitioner that would fit within their agreed trial strategy." The post-conviction court specifically found that trial counsel "did not in fact ask a question during cross[-]examination of Ms. Hooker that 'opened the door' to damaging or prejudicial testimony." Although the State successfully convinced the trial court that Ms. Hooker had opened the door, the post-conviction court found that trial counsel "took appropriate steps to minimize the effect on the jury" by "suggesting a limiting instruction be given to the jury," and the trial court did "limit the jury's use of the testimony." With respect to the petitioner's arrest warrant, the post-conviction court found that trial counsel and the petitioner had "discussed the validity of the arrest warrant on several occasions" and that trial counsel had determined the warrant to be valid. Finally, the post-conviction court accredited the testimony of trial counsel that he communicated all plea offers to the petitioner and that the petitioner rejected all offers.

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel, claiming that trial counsel performed deficiently by opening the door to and failing to object to evidence of the petitioner's prior bad acts, by failing to challenge the legality of the petitioner's arrest, by failing to call Ms. Barker as a witness at trial, and by failing to communicate plea offers to the petitioner. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453

(Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick*, 454 S.W.3d at 458 (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

*I. Failure to Prevent Testimony of Prior Bad Acts*

The petitioner first contends that trial counsel was ineffective by opening the door to testimony of the petitioner's prior bad acts and by then failing to object to said testimony. We disagree.

During trial counsel's cross examination of Ms. Hooker at trial, the following exchange occurred:

> Q: You don't have any evidence or any personal knowledge that [the petitioner] sold drugs to Pat Wise on February 11th.
>
> A: No, I don't.
>
> Q: You didn't see any transaction whereby [the petitioner] sold Lortabs to Pat Wise on April 23rd.
>
> A: No, I don't [sic].
>
> Q: In fact you were married [to] this man, you never *saw* him sell Lortabs to anybody did you?
>
> A: No, I didn't.

(Emphasis added).

The State then requested a bench conference and mistakenly informed the trial court that trial counsel had just asked Ms. Hooker whether she had "personal knowledge" that the petitioner "sold drugs to anyone." The prosecutor then acknowledged that Ms. Hooker "didn't observe [the petitioner] sell drugs to anyone," stating that the petitioner had "told her these drugs were available for sale," and that, thus, Ms. Hooker's testimony was misleading. The trial court permitted the prosecutor to question Ms. Hooker, outside the presence of the jury, about her knowledge of the sale of drugs to Ms. Wise:

> Q: Did the [petitioner] tell you that he was going to or did sell drugs to Patricia Wise on February 11th?
>
> A: No, he didn't.
>
> Q: Did he tell you that he was going to or had sold drugs to Patricia Wise on April 23rd?

A: No, he didn't.

Q: During this period of time from January to April did you know he sold drugs?

A: Yes, I did.

Q: How did you know that?

A: Because he told me.

Q: Okay, and did he also tell you that these drugs were available for sale, his Lortabs?

A: Yes, he did.

Trial counsel, apparently unaware that the prosecutor had misconstrued his final cross-examination question, agreed that Ms. Hooker's testimony was misleading and suggested that the prosecutor be allowed to question Ms. Hooker on whether the petitioner had told her that he had sold drugs. The trial court found this to be an acceptable solution and inquired whether trial counsel sought a curative instruction; trial counsel responded in the affirmative. The jury returned to the courtroom, and, on redirect examination, Ms. Hooker testified that the petitioner had told her on more than one occasion that he was selling Lortabs. The trial court then admonished the jury that it could not "consider such evidence to prove [the petitioner's] disposition to commit the crime for which he's on trial in this case." Instead, the court instructed, the jury could use such evidence "for the limited purpose of determining whether it provides a complete story of the crime in this case."

On direct appeal, the petitioner argued that the trial court erred by permitting Ms. Hooker to testify that the petitioner had sold Lortabs on prior occasions, and the State responded that the petitioner had waived the issue by failing to object and instead requesting only a curative instruction. *Victor D. McMiller*, slip op. at 8. This court agreed that the petitioner had waived the issue by failing to lodge a contemporaneous objection and found that trial counsel had "opened the door to [Ms. Hooker's] testimony of [the petitioner's] prior drug sales by asking her about her knowledge of it during cross-examination." *Id.*, slip op. at 12. In the instant appeal, the petitioner now argues that this court's ruling in *Victor D. McMiller* evinces trial counsel's deficient performance.

Trial counsel's performance, however, cannot be considered deficient when he did not, in fact, open the door to testimony of prior drug sales. A careful reading of the trial testimony reveals that trial counsel did not ask Ms. Hooker whether she had personal knowledge that the petitioner had sold Lortabs to anyone; trial counsel simply asked Ms. Hooker whether she had *personal knowledge* of the petitioner's selling drugs to Ms. Wise on February 11th and whether Ms. Hooker had ever *seen* the petitioner sell Lortabs to anyone, and Ms. Hooker responded in the negative to both questions. It appears that the prosecutor mistakenly combined these two questions when arguing that trial counsel had opened the door. Because trial counsel committed no error in conducting his cross-examination of Ms. Hooker, the petitioner has failed to show that trial counsel's representation was deficient in this regard.

## II. Failure to Challenge Arrest Warrant

Next, the petitioner argues that trial counsel was ineffective by failing to challenge the validity of his arrest warrant. The petitioner, however, failed to introduce into evidence either the capias or the arrest warrant. The burden is on the petitioner to prove his allegations by clear and convincing evidence, *see* T.C.A. § 40-30-110(f), which burden includes preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Because the petitioner failed to file an adequate record, this court must presume the lower court's ruling that trial counsel was not deficient in this regard was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

## III. Failure to Call Witness

The petitioner next contends that trial counsel was ineffective by failing to call Ms. Barker as a witness at trial. Again, we disagree.

The petitioner failed to present Ms. Barker as a witness at the evidentiary hearing. As such, we cannot speculate how she might have testified at trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Furthermore, trial counsel's reasoning for not calling this witness – that her testimony would have been detrimental to the petitioner – was a "reasonably based trial strategy" that we will not "second-guess." *See Adkins*, 911 S.W.2d at 347.

## IV. Failure to Communicate Plea Offers

Finally, the petitioner argues that trial counsel was ineffective by failing to convey to him plea offers from the State. In our view, the record fully supports the ruling

of the post-conviction court.  The explicitly accredited testimony of trial counsel on this point, as well as the letters introduced into evidence at the hearing, evince trial counsel's conveyance of the plea offers and the petitioner's rejection of the same.  This issue is without merit.

*Conclusion*

The petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.  Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE